## Case No. 17,932.

WOLVERTON v. LACEY.

[18 Law Rep. 672.]

District Court, N. D. Ohio. Feb., 1856.

CONSOLIDATION OF ACTIONS—DEBT FOR PENALTIES UNDER ST. 1790, CH. 29, § 1 (1 STAT. 131)—DECLARATION IN—FEMALE SEAMEN—SHIPPING ARTICLES—MARITIME JURISDICTION ON THE LAKES.

1. Where the plaintiff has several causes of action which may be joined, one suit only should be brought; otherwise, the court will compel a consolidation with costs of the application therefor.

2. In an action of debt, to recover several penalties under the act of congress of 1790, c. 29, § 1, against the master of a vessel for shipping seamen without articles, a single count for all the penalties is sufficient.

3. A female shipped on board a vessel as cook and steward is entitled to all the rights and subject to all the disabilities of a seaman or mariner, and the provisions of the statute concerning shipping articles apply as well to such cook and steward as to the sailor before the mast.

4. The provisions of this act, imposing a penalty on masters of vessels in the merchant service for shipping seamen without articles, extend to the merchant marine upon the lakes and public navigable waters connecting the same.

5. Independent of the act of congress of February 26, 1845 (5 Stat. 726), under the constitution, the maritime law of the United States has the same application to cases upon the lakes as upon tide waters.

At law.

John Crowell and F. T. Wallace, for plaintiff.

D. K. Carter and D. O. Morton, Dist. Atty., for defendant.

WILLSON, District Judge. This is an action of debt, brought to recover penalties under the first section of the act of congress of July 20, 1790. The declaration contains but one count, and is, as to form and material averments, substantially in accordance with the established precedents for declarations on penal statutes. The plaintiff alleges that the defendant, on the 6th of May, 1855, was master of the schooner Yorktown, a vessel

of over fifty tons burden, and navigating the waters of the lakes, and that with her he made a voyage from Cleveland to Chicago. That he employed and shipped on board for said trip, at Cleveland, ten persons as seamen in various capacities, one of the ten a female cook. That said voyage was performed with such crew, none of whom had signed shipping articles of agreement, as required by the statute. Whereby he insists that the defendant has forfeited the sum of twenty dollars for each of the persons so employed, and thereby claims that an action qui tam hath accrued to him, to recover for himself and the United States the aggregate sum of two hundred dollars.

The defendant's plea is nil debet. During the progress of the trial several questions have been raised by the defendant's counsel, and argued on both sides with much ability. One ground taken is, that separate suits should have been brought for each penalty. Another is, that if it is competent to consolidate in one suit the actions to recover the several penalties, then the declaration should contain separate counts for each penalty. The third and main point is, that the first section of the statute of 1790 has no application to the merchant marine of the lakes.

This action is properly brought so far as relates to the consolidation in one action of the suits to recover these penalties. The law abhors an unnecessary multiplicity of suits. Where a plaintiff has two or more causes of action which may be joined in one, he ought to bring one suit only; and in such case, if he commences more than one, he may be compelled to consolidate them, and pay the costs of the application. 1 Chit. Pl. 228. This is a principle of law designed to protect a defendant from an unreasonable accumulation of costs. In this case, had the plaintiff commenced ten different suits, the court, on motion, would have ordered a consolidation at his costs.

We are equally clear that the second objection is not well taken. If the action of debt is the proper mode to recover penalties accruing under this statute (and this seems not to be questioned), then a single count is sufficient. It matters not whether it is alleged that the defendant shipped one or a dozen seamen without articles for the voyage, provided the plaintiff in his declaration has set forth specially and accurately the facts bringing the defendant within the statute declared on. The object and purpose of pleading is to apprise the opposite party of the facts constituting the cause of complaint against him; and they should be set forth with sufficient certainty, that the record may be a protection against future recovery. We do not see how the defendant would be better informed as to the subject-matter of the suit, and thereby be enabled to make a better defence, had this declaration contained a count for each penalty. Each seaman is named and described, to the number of ten, the full complement of the crew on the particular voyage. The defendant is thus as fully informed of the acts complained of, as if particularly set forth in separate counts. It is competent to embrace in one count several penalties upon a penal statute. People v. McFadden, 13 Wend. 396.

Equally well settled is another point raised in the case, viz. that a female may be entitled to all the rights and subject to all the disabilities of a seaman or mariner. Since the decision of Lord Stowell in the case of The Jane & Matilda, 1 Hagg. Adm. 187, this doctrine has been fully recognized by the courts of England and the United States. It is now well determined that the term "mariner" includes cooks, stewards, carpenters, coopers, and firemen as well as sailors. In fact, all on board the vessel, employed in her equipment, her preservation, or the preservation of the crew, are denominated "seamen." And hence services performed by a female in the capacity of cook, entitle her to a proceeding in rem to recover her wages therefor as a mariner. Thackarey v. The Farmer of Salem [Case No. 13.852]; Conk. Adm. 72; Fland. Mar. Law. 354, 355. The requisition of the statute, therefore, as to signing shipping articles, extends as well to the cook or steward as to the sailor before the mast.

Without further discussion of questions which may be regarded as incidental to the main matter in controversy, I proceed to the inquiry, does the act of July 20, 1790, extend to and become operative for the government and regulation of seamen engaged in the merchant service on the lakes? This question has been raised and argued by counsel as if this suit was a proceeding in the admiralty, and in its determination, the court should apply the rules and be governed by the principles of admiralty law. It is insisted that the statute of 1790 never was intended for, and in fact never had any binding force and effect on waters not subject to admiralty jurisdiction; that until 1845 there was no admiralty law applicable to the lake marine; that the act of February 26, 1845,. extending the jurisdiction of the district courts to certain cases upon the lakes, in providing, "that the maritime law of the United States so far as the same is or may be applicable thereto, shall constitute the rule of decision in such suits," vested in the courts judicial power to determine the question of the applicability of the statute of 1790 to the lakes. And the defendant resists such application on the ground of public policy; that it would be detrimental alike to seamen and owners of vessel property; that the requirements of the statute have never been enforced here, owing to the want of adjudged cases as authority, and that it would be as difficult to make seamen sign shipping articles as required by the first section. as it would be absurd to enforce the provisions of the eighth section

as to vessels engaged in the Canada trade. This court has cognizance of this suit by virtue of the ninth section of the act of 1789 [1 Stat. 76], which declares that the district courts shall have exclusive original jurisdiction of all suits for penalties and forfeitures under the laws of the United States. This proceeding is not a suit in a case of admiralty and maritime jurisdiction. It is a common law action, and the process, pleadings, and proceedings are in accordance with the practice and principles of the common law.

But suppose we grant the point claimed by the defendant, viz. that the statute of 1790 is operative only on waters subject to admiralty and maritime jurisdiction, wherein does this benefit the defendant? In passing the act of 1845 (at least in the provisions before referred to) congress performed a work of supererogation. Since the decision in the case of The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, it has been a settled principle of law, that admiralty jurisdiction is not confined to tide water, but extends to the public navigable waters of the United States. The narrow and restricted definition of "tide-water admiralty jurisdiction," as declared by the courts of England and explained by English writers on the subject, is now rejected by the federal courts. The supreme court has boldly, and we think wisely, overruled the case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, and the Orleans v. Phœbus, 11 Pet. [36 U. S.] 175; and in so doing has shown the unreasonableness of giving a construction to the constitution which would measure the jurisdiction of the admiralty by the tide. The great and increasing magnitude of the commerce of the lakes, and the almost fabulous increase of the lake marine, has finally caused the courts to pause and inquire, whether, in all its varied rights and business arrangements, there is anything to distinguish this great lake commerce from the other maritime commerce of the world. It has been truly said that "a salvage, an average, a bottomry, a case of wages on Lake Erie, are as clearly cases of admiralty and maritime jurisdiction, and have reason to be subject to the same rules and regulations of maritime law, as similar cases on the Black Sea, the Baltic, or on Long Island Sound. Their nature is the same everywhere—they are maritime everywhere." It is not surprising, therefore, that for the purpose of extending equal justice to all, the supreme court should have departed from its narrow construction of the constitution, as given in the case of The Thomas Jefferson, and placed the admiralty jurisdiction upon a basis of perfect equality in the rights and privileges of the citizens of the different states, not only in the laws of the general government, but in the mode of administering them. This is done in the case of The Genesee Chief.

Independent of the act of 1845, under the constitution, the maritime law has the same application to cases upon the lakes as to those upon tide-waters. Congress, doubtless, has the power to prescribe the mode of proceeding in admiralty, as was done by the act of 1845, in saving to the parties the right of trial by jury. The admiralty jurisdiction on the lakes, however, lies deeper and beyond the act of 1845. Hence the objection that the statute of 1790 is operative only on waters subject to the admiralty jurisdiction, has no force in the case. Besides, there is nothing in the language of the law of 1790 restricting its operations to cases upon tide water. Its language is, "every ship or vessel," "every seaman or mariner," without any allusion to salt water or the tides; clearly covering all cases of seamen employed and serving on ships or vessels engaged in the merchant service on the public navigable waters of the United States. The registry and enrollment act of 1793 [1 Stat. 287] is not more specific than this as to the waters on which it should apply; yet its binding force and effect upon the shipping of the lakes has never been questioned or disregarded in practice.

Aside from the importance of divesting the law of its uncertainty, it is in our opinion equally important as a matter of public policy, that the first section of the act of 1790 should be enforced here. The loss of life and property on the lakes is annually on the increase. From authentic sources it is ascertained that in the single year of 1854, the loss of life was one hundred and nineteen persons, and the loss of property $2,187,285 by disaster. These alarming facts induced this court, at a recent session of the federal grand jury, to call the attention of that intelligent body to this subject; and the jurors were instructed to inquire whether these losses were occasioned by the noncompliance with the statute of 1849 [9 Stat. 380] in relation to signal lights, and the steam vessel acts of 1838 [5 Stat. 304] and 1852 [10 Stat. 61]. The grand jury, after devoting much time and examining a great number of witnesses, reported to the court, among other things, "that a frequent cause of disaster on the lakes has been the want of sufficiency of seamen and a lack of efficiency in them, and a want of control on the part of masters of vessels over their men. This results in a great part from the neglect of masters of vessels to comply with the statute requiring them to have their men sign shipping articles. Insubordination results at times when legalized authority is most needed. The men abandon the vessel (perhaps in the first port), and she is obliged to return, it may be, without an adequate supply of hands, or if there is, a continual changing makes them always strangers to the vessel and the ways of working her." We are satisfied that a just and fair interpretation of the law, as well as the dictates of a sound public policy, demand the enforcement of the first section of the statute of 1790.

This brings us to the testimony in the case. It is in evidence that in May, 1855, the schooner Yorktown (of which the defendant was master) was a registered vessel of over fifty

tons burden, and that she made the trip from Cleveland to Chicago with a crew of ten persons, as charged. Four only of the persons employed on the vessel for the trip have been sworn and examined in the case. These are Daniel Chottison and his wife Jane, Samuel W. Wolverton and Robert McKay. They all testify that on or about the 5th of May, 1855, they were shipped on board of said vessel at Cleveland, in the various capacities of mate, sailor, and one of them, Jane Chottison, as cook; that they made the trip from Cleveland to Chicago and back, and that neither of them signed shipping articles, and that they had no knowledge of any such papers on board the vessel. Neither of the witnesses were able to state whether the remainder of the crew signed shipping papers or not. Some conversation had in the presence of the defendant, between two of the crew, at the time they were paid off and discharged in Chicago, is in evidence, tending to show that they also had not signed articles. But the conversation was not addressed to the defendant, and it is doubtful whether he, in fact, heard it; at all events, it is too vague and uncertain to justify the court in giving it any weight. As to the remaining six men of the crew, there is no evidence before us that will warrant a charge of delinquency of the defendant and subject him to penalties. We therefore pronounce for four penalties, and judgment is accordingly rendered against the defendant for the sum of $80 and costs of suit.